IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

ANGELA McCUTCHEN and her          )
husband CHRISTOPHER McCUTCHEN,    )
                                  )
     Plaintiffs,                  )
                                  )
v.                                )   No. 05-2142 Ml/V
                                  )
TIPTON COUNTY, LAURA ADKINS,      )
WILLIAM WHITE, and BRANDON        )
WILLIAMS,[1]                      )
                                  )
      Defendants.                 )
_____

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND
     ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
_____

     Before the Court is Defendants' Motion to Dismiss
Plaintiffs' Amended Complaint, filed September 19, 2005.[2]
Plaintiffs responded in opposition on October 6, 2005.  Also
before the Court is Plaintiffs' Motion for Default Judgment as to
Defendants Tipton County, Laura Adkins, William White, and
Brandon Williams, filed September 6, 2005.  Defendants responded
to Plaintiffs' motion for default judgment on September 19, 2005.
For the following reasons, the Court DENIES Defendants' motion to
dismiss.  The Court also DENIES Plaintiffs' motion for default

_____

     [1] Plaintiffs' original complaint also alleged claims against the
Metropolitan Government of Nashville and Davidson County, William
Patterson, Galen Sanders, and Paul Sharpe.  On August 23, 2005, a
consent order was entered dismissing with prejudice all claims against
these defendants.  Therefore, the Clerk is ORDERED and the parties are
instructed to amend the style of the case to reflect this change.

     [2] Defendants filed a motion to dismiss the original complaint on
June 3, 2005.  The Court DENIES this motion as moot.  The Court also
DENIES as moot Defendants' Motion for Leave to File a Reply to
Plaintiffs' Response in Opposition to [Defendants'] Motion to Dismiss,
filed September 1, 2005.

judgment.  Plaintiffs' state law claims against Defendant Tipton County are DISMISSED.

## I.   Background

This case arises out of Plaintiff Angela McCutchen's arrest and imprisonment in Tipton County on February 25, 2004.  Angela McCutchen ("Plaintiff") and her husband, Christopher McCutchen ("Plaintiff C. McCutchen"), initiated this action on February 22, 2005, and filed an Amended Complaint on August 15, 2005.[3]

According to the allegations in the Amended Complaint, Plaintiff was arrested at her residence on February 25, 2004, in Atoka, Tennessee, by Defendants William White and Brandon Williams in their capacity as deputy sheriffs for Tipton County. White and Williams informed Plaintiff that they had an arrest warrant issued by a Nashville court for violation of probation pertaining to an underlying offense of prostitution.  Plaintiff alleges that the warrant was issued on March 13, 1997, for the arrest of "Angela C. Decembring aka Decimbrino" at the address "Travel Lodge, Room 411, Murf. Rd.," which is apparently in Nashville.  The "reverse side of the warrant was altered after issuance by the handwritten insertion of the name 'McCutchen.'" (Am. Compl. ¶¶ 8-12.)

Plaintiff informed the officers that she was not the person sought in the warrant, explained that her identification had been stolen ten years earlier, and asked the officers not to arrest her.  White and Williams allegedly made comments to the effect

---

[3] The Amended Complaint contains additional factual allegations.

2

that they did not think Plaintiff was a prostitute.  They also
notified Defendant Adkins, another Tipton County official "with
policy-making authority relating to the execution of warrants[,]"
that Plaintiff claimed that she was not the person sought in the
warrant.  Adkins nevertheless instructed White to arrest
Plaintiff and transport her to the Tipton County Jail, which the
did.  (Am. Compl. ¶¶ 20-28.)

    At the Tipton County Jail, Plaintiff again stated that she
was not the person sought in the warrant and requested a
fingerprint comparison.  According to Plaintiff, the Tipton
County officials never fingerprinted her and failed to obtain
from Nashville officials the photographs and fingerprints of the
person sought in the arrest warrant, even after Plaintiff's
husband called the Metro Nashville police department and
requested that they send the Tipton County officials a photograph
of the individual named in the warrant.  (Am. Compl. ¶¶ 29-33.)

    Plaintiff further alleges that Defendant Tipton County
refused to allow Plaintiff to post bail.  Instead, she was
shackled and bound by two officers from the Nashville police and
transported to a jail in Nashville.  Plaintiff was placed in a
cell, and then taken to be "processed."  While Plaintiff was
being fingerprinted, an "officer began shaking his head while
looking at a picture and said this is not you."  Plaintiff was
released shortly thereafter and driven home by her husband,
approximately thirty-one hours after her arrest.  When she was
leaving the jail, "the uniformed Metro Nashville officers began

3

covering their name tags with their hands telling [Plaintiff] not to remember their names when she filed the lawsuit." (Am. Compl. ¶¶ 34-53.)

According to Plaintiff, the Nashville police were in possession of color photographs and fingerprints of the person sought in the warrant, but did not send these items to the Tipton County officers. Plaintiff claims that Tipton County had a policy of not requesting photographs or fingerprints of the wanted person when executing misdemeanor warrants from other jurisdictions. Plaintiff alleges that Tipton County also had a policy of not comparing photographs or fingerprints of the individual arrested to those of the wanted individual. (Am. Compl. ¶¶ 18-19.)

Plaintiff brings claims under 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendments. She also brings claims under state law for negligence against Tipton County and for negligence and false imprisonment against the individual defendants. Plaintiff alleges that she suffered "personal injury, pain, emotional distress, loss [of] wages, embarrassment, humiliation, and injury to her personal reputation." Plaintiff's husband, Christopher McCutchen, brings a claim for the loss of services and consortium of his wife under state law. (Am. Compl. ¶¶ 65-66.)


**II.  Defendants' Motion to Dismiss the Amended Complaint**

4

## A.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true, <u>Saylor v. Parker Seal Co.</u>, 975 F.2d 252, 254 (6th Cir. 1992), and must construe all of the allegations in the light most favorable to the plaintiff, <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

## B.   Analysis

Plaintiff asserts two constitutional claims under § 1983. First, she alleges that Defendants Adkins, White, and Williams violated the Fourth Amendment's requirement that all arrests be reasonable and made on probable cause.  Second, Plaintiff claims that Defendant Tipton County deprived her of liberty without due process in violation of the Fourteenth Amendment.  Defendants argue that Plaintiff's § 1983 claim should be dismissed in its entirety because (1) "a false arrest made pursuant to a valid warrant does not establish a Constitutional deprivation" and (2) the Tipton County officers are entitled to qualified immunity. (Mem. Supp. Defs.' Mot. Dismiss 3.)  The  Court will address Defendants' arguments in turn.

### 1.  Constitutional Violation Under 42 U.S.C. § 1983

To establish a <u>prima facie</u> case under § 1983, a plaintiff must prove two elements: (1) that the government action occurred "under color of law" and (2) that the action is a deprivation of a constitutional right or federal statutory right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>Block v. Ribar</u>, 156 F.3d 673, 677 (6th Cir. 1998).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994).  Defendants argue that Plaintiffs have failed to state a claim under § 1983 because an arrest and detention made pursuant to a valid arrest warrant is not a constitutional deprivation, even when the person arrested is not the person sought by the warrant.  Defendants rely solely on the Supreme Court's opinion in <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), for support.

At issue in <u>Baker</u> was whether the intentional failure to investigate an arrestee's protestations that he had been mistakenly arrested constitutes a deprivation of liberty without due process.  Plaintiff McCollan was arrested pursuant to a warrant issued for his brother.  McCollan's name and address were listed on the warrant because sometime earlier, his brother——in an attempt to hide his true identity——had provided the police with McCollan's name and address instead of his own.  The Court held that McCollan had failed to state a claim under 42 U.S.C. § 1983, stating:

> Absent an attack on the validity of the warrant under which he was arrested, [McCollan's] complaint

is simply that despite his many protests of mistaken identity, he was detained in the Potter County jail [until] the validity of his protests was ascertained.  Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. [McCollan] was indeed deprived of his liberty for a period of days, but <u>it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment</u>.

<u>Id.</u> at 143-44 (emphasis added).  The Court went on to note that "given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence."  <u>Id.</u> at 145-46.[4]

    <u>Baker</u>'s holding, however, is premised on the existence of a valid arrest, <u>see</u> <u>Brown v. Byer</u>, 870 F.2d 975, 978 (5th Cir. 1989)("<u>McCollan</u> did not decide the constitutionality of McCollan's arrest; on the contrary, the Court's opinion <u>assumes</u> the constitutionality of the arrest.  Only the incarceration, not

---

    [4] In reliance on <u>Baker</u>, courts in this circuit have refused to recognize constitutional violations where an individual is mistakenly arrested pursuant to a warrant issued for someone with the same name.  <u>See</u> <u>Jackson v. Hoylman</u>, 1993 WL 501591, at *3(6th Cir. Dec. 3, 1993)(finding no violation of Fourth Amendment where defendant officers mistakenly arrested suspect's father, who had same name); <u>White v. City of Muskegon</u>, 749 F. Supp. 829, 831-32 (W.D. Mich. 1990)(granting motion to dismiss due process claim where plaintiff mistakenly arrested pursuant to warrant for individual with same name).  Similarly, the Sixth Circuit has held that officers have no duty to investigate whether an arrest warrant has been mistakenly issued where the warrant is valid on its face.  <u>See</u> <u>Masters v. Crouch</u>, 872 F.2d 1248, 1252 (6th Cir. 1989)(noting that "[t]he warrant named the plaintiff . . . and gave her correct address.")

the arrest, was put in issue."), and courts have distinguished
Baker in cases involving a facially invalid or altered warrant,
see, e.g., Power v. City of Chicago, 664 F.2d 639, 649 (7th Cir.
1981) ("[W]here an arrest is based on an invalid warrant, Baker
does not preclude recovery under section 1983 for an
unconstitutional deprivation of liberty."); see also Brown v.
Byer, 870 F.2d 975, 978 (5th Cir. 1989)(distinguishing Baker
where sheriff altered name and other information on arrest
warrant to match that of plaintiff).

Here, Plaintiff's allegations differ substantially from the
legal issues and facts of Baker. Plaintiff challenges not only
her post-arrest denial of due process, but also the
constitutionality of the arrest leading up to her incarceration.
Cf. Baker, 443 U.S. at 143 (noting that McCollan's claim against
the sheriff was "not for the wrong name being placed in the
warrant or the failure to discover and change same[,] or even the
initial arrest . . ."). Plaintiff alleges that she was arrested
pursuant to a warrant that was not valid on its face. Rather, it
was issued for someone with a different name——"Angela C.
Decembring aka Decimbrino"——at a different address——"Travel
Lodge, Room 411, Murf. Rd."——than Plaintiff. Moreover, Plaintiff
alleges that the warrant was altered after issuance. (Am. Compl.
¶ 8.) Thus, Defendants' reliance on Baker as the sole basis for
its motion to dismiss is misplaced.

When evaluating a motion to dismiss pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure, the Court must

construe all of the plaintiff's allegations in the light most
favorable to the plaintiff, <u>Scheuer</u>, 416 U.S. at 236, and may
dismiss a complaint "only if it is clear that no relief could be
granted under any set of facts that could be proved consistent
with the allegations." <u>Hishon</u>, 467 U.S. at 73.  Drawing all
inferences in Plaintiff's favor, as it must, the Court concludes
that Plaintiff has sufficiently alleged a Fourth Amendment
constitutional deprivation under § 1983 against Defendants
Adkins, White, and Williams.

     Defendants argue in the alternative that officers Adkins,
White, and Williams are entitled to qualified immunity.  The
doctrine of qualified immunity provides that "government
officials performing discretionary functions generally are
shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The
Sixth Circuit has a three-part test to determine whether a
government official is entitled to qualified immunity:

> First, we determine whether, based upon the
> applicable law, the facts viewed in the light most
> favorable to the plaintiff[] show that a
> constitutional violation has occurred.  Second, we
> consider whether the violation involved a clearly
> established right of which a reasonable person would
> have known.  Third, we determine whether the
> plaintiff has offered sufficient evidence to indicate
> that what the official allegedly did was not
> objectively reasonable in light of the clearly
> established constitutional rights.

<u>Sample v. Bailey</u>, 409 F.3d 689, 695-96 (6th Cir. 2005)(quoting

<u>Feathers v. Aey</u>, 319 F.3d 843, 848 (6th Cir. 2003)).  Defendants argue that they are entitled to qualified immunity because "Plaintiffs have not and cannot establish a constitutional violation, as a false arrest based upon mistaken identity but pursuant to a valid warrant is not a deprivation of a constitutional right."  (Defs.' Mem. Support Mot. Dismiss Am. Compl. 7.)

As explained above, Plaintiff's allegations, construed in the light most favorable to Plaintiff, show that the officers arrested Plaintiff without probable cause pursuant to an invalid warrant.  It is well settled that the right to be free from unlawful arrests or unreasonable seizures is a clearly established right.  <u>California v. Hodari D.</u>, 499 U.S. 621, 624 (1991).  Finally, Plaintiff has offered sufficient evidence to indicate that the defendant officers' actions were not objectively reasonable in light of this clearly established right.  Police officers are entitled "to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable."  <u>Yancey v. Carroll County</u>, 876 F.2d 1238, 1243 (6th Cir. 1989); <u>see also</u> <u>Lee v. Gregory</u>, 363 F.3d 931, 935 (9th Cir. 2004)("No reasonable officer would believe that he is entitled knowingly to arrest the wrong man pursuant to a facially valid warrant the officer knows was issued for someone else. Every officer knows, or should know, that he needs a warrant

which correctly identifies the arrestee, or probable cause, to arrest a particular individual."); <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 273 (3d Cir. 2000)("[An] apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances[, which include] other information that the officer possesses or to which he has reasonable access.")  Accordingly, the defendant officers are not entitled to qualified immunity.  The motion to dismiss Plaintiff's § 1983 claim is DENIED.

**2.  State Law Claims**

Plaintiff Angela McCutchen brings claims under state law for negligence against Tipton County and for negligence and false imprisonment against Adkins, White, and Williams.  Her husband brings a claim for the loss of the services and consortium of his wife against all defendants.[5]  Defendants request that this Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims in accordance with the jurisdictional provision of the Tennessee Governmental Tort Liability Act ("TGTLA").

Plaintiff Angela McCutchen's claims under 42 U.S.C. § 1983

---

[5] The Amended Complaint sets forth Plaintiff Christopher McCutchen's claim for loss of consortium in the section entitled "Damages."  (Am. Compl. ¶ 78 ("Plaintiff Christopher McCutchen avers as a result of the defendants' acts, actions, and omissions (relating only to the state law claims) he has incurred a loss of wages, experienced stress and anxiety.  In addition plaintiff was deprived of the services and consortium of his wife.")))  The Court construes this allegation as a separate cause of action under Tennessee law.  <u>See</u> Tenn. Code Ann. § 25-1-106 (providing for a right of recovery of loss of consortium for a person whose spouse is injured); <u>McPeek v. Lockhart</u>, 174 S.W.3d 751, 755 (Tenn. Ct. App. 2005)("While a loss of consortium claim is a derivative claim, it is also a distinct and separate cause of action from that of the injured spouse's claim.")

would ordinarily confer supplemental jurisdiction over the state
law claims in this case because they arise out of the same facts
and form part of the same case or controversy.  <u>See</u> 28 U.S.C. §
1367(a).  Section 1367(c) provides, however, that district courts
may decline to exercise supplemental jurisdiction over a claim
". . . if . . . in exceptional circumstances, there are other
compelling reasons for declining jurisdiction."  28 U.S.C. §
1367(c).

The TGTLA provides that "[e]xcept as may be otherwise
provided in this chapter, all governmental entities shall be
immune from suit for any injury which may result from the
activities of such governmental entities wherein such
governmental entities are engaged in the exercise and discharge
of any of their functions, governmental or proprietary."  Tenn.
Code Ann. § 29-20-205.  Tenn. Code Ann. § 29-20-307 provides that
"[t]he circuit courts shall have exclusive original jurisdiction
over any action brought under this chapter and shall hear and
decide such suits without the intervention of a jury."  The Sixth
Circuit has held that "the Tennessee legislature expressed a
clear preference that TGTLA claims be handled by its own state
courts.  This unequivocal preference of the Tennessee legislature
is an exceptional circumstance [under 28 U.S.C. § 1367(c)] for
declining jurisdiction."  <u>Gregory v. Shelby County, Tenn.</u>, 220
F.3d 433, 446 (6th Cir. 2000).  Defendants rely on <u>Gregory</u> in
support of their argument that this Court should decline
jurisdiction over Plaintiffs' state law claims.

12

The TGTLA, however, "addresses the liability of governmental entities only.  Its jurisdictional limitations do not apply to persons sued individually."  Timberlake v. Benton, 786 F. Supp. 676, 697 (M.D. Tenn. 1992)(exercising supplemental jurisdiction over state law claims in civil rights action against officers sued in their individual capacities)(noting that "judicial efficiency will be served by hearing, in a single court, all of the claims arising out of the events of [this date]").

Plaintiffs sued Defendants Adkins, White, and Williams in their individual capacities, not in their official capacities.  Thus, the TGTLA does not govern Plaintiffs' claims against these Defendants, and any jurisdictional limitations set forth in the TGTLA do not apply here.  Accordingly the Court will exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Plaintiffs' state law claims against the individual defendants, as they arise out of the same facts and form part of the same case or controversy as the federal claims.

Plaintiffs' claims against Tipton County, on the other hand, are governed by the TGTLA because Tipton County is a government entity.  See Tenn. Code Ann. § 29-20-205.  The Act provides that governmental entities are not immune from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . . false imprisonment pursuant to a mittimus from a court, false arrest, . . . or civil rights[.]" Id. (emphasis added).  The exceptions listed in § 29-20-205 are the only torts

13

for which immunity is not removed when an injury is proximately caused by a negligent act or omission of an employee within the scope of employment.  <u>Limbaugh v. Coffee Med. Ctr.</u>, 59 S.W. 3d 73, 84 (Tenn. 2001).

In this case, Plaintiffs' claims against Tipton County arise out torts that constitute exceptions under § 29-20-205——specifically Angela McCutchen's alleged false arrest and false imprisonment in violation of her civil rights.  <u>See</u> <u>Willis v. Neal</u>, 2006 WL 270288, at *17 (E.D. Tenn. Feb. 1, 2006) ("Because plaintiff asserts her state law claims in the context of a civil rights case, her alleged injuries arise out of 'civil rights' [under § 29-20-205].");  <u>Hale v. Randolph</u>, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004)(construing "civil rights" under § 29-20-205 to include claims arising under the federal civil rights laws and the United States Constitution).  Accordingly, Tipton County is immune from suit under section 29-20-205 of the TGTLA.  <u>See Willis</u>, 2006 WL 270288, at *17 (explaining that "§ 29-20-205 of the TGTLA provides that immunity is retained when the injury arises out of 'civil rights'" and dismissing with prejudice plaintiff's claims of false arrest, malicious prosecution, and abuse of process).  Plaintiffs' state law claims against Tipton County are DISMISSED.

## III.  Plaintiffs' Motion for Default Judgment

The second matter before the Court is Plaintiffs' Motion for Default Judgment as to Tipton County, Laura Adkins, William White, and Brandon Williams, filed September 6, 2005.  Plaintiffs

contend that because Defendants have not filed a responsive pleading to their Amended Complaint, default judgment should be entered in Plaintiffs' favor pursuant to Federal Rule of Civil Procedure 55(a).  This argument is without merit.

Plaintiffs filed their original complaint on February 22, 2005.  On May 2, 2005, Defendants filed an answer, and on June 3, 2005, Defendants filed a motion to dismiss.  On July 20, 2005, Plaintiffs requested leave to amend their complaint.  The request was granted, and Plaintiffs filed an amended complaint on August 15, 2005.  Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]" Fed. R. Civ. P. 15(c).  In this case, Plaintiffs' amended complaint alleges claims that arose out of the occurrence described in the original pleading, and therefore, the amended complaint relates back to the date of the original complaint.  Since Defendants filed a motion to dismiss the complaint on June 3, 2005, and a motion to dismiss the amended complaint on September 19, 2005, Plaintiffs cannot show that Defendants have "failed to plead or otherwise defend" as required under Rule 55(a).  Accordingly, Plaintiffs are not entitled to a default judgment, and their motion is DENIED.

## III. Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss.  Plaintiffs' state law claims against Defendant Tipton County are DISMISSED.  The Court DENIES Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(a).

So ORDERED this 10th day of March, 2006.


   /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE